CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

AUG 21 2009

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| CHARLES L. KING, SR., | ) | Civil Action No. 7:09cv00011 |
|     Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| MUTUAL OF OMAHA | ) | By: Samuel G. Wilson |
| INSURANCE COMPANY, | ) | United States District Judge |
|     Defendant. | ) | |

This is an action for benefits under the Employee Retirement Income Security Act, Pub. L. No. 93-406, 88 Stat. 829 (1974) (codified as amended in scattered sections of 26 U.S.C. and 29 U.S.C.) ("ERISA"), brought by Plaintiff Charles L. King, Sr. against Defendant United of Omaha Life Insurance Company ("United"). Through his employer, King participated in two ERISA plans that United insured and administered. While at work, King severely mangled and crushed his hands. United granted him benefits under a provision of one of these ERISA plans, but denied him benefits for loss of hands under both plans. King asks this court to grant him benefits for loss of one or both hands, or in the alternative, to remand his claim to United in light of additional medical input. United opposes remand and both parties have moved for summary judgment. The court finds that United did not abuse its discretion when it denied King benefits for loss of one or both hands and finds no basis to remand King's claim. Accordingly, the court grants summary judgment for United and declines to remand the claim.

I.

King worked as a manufacturing technician for Metalsa, Roanoke, a steel fabrication company that manufactures chassis and other parts for large vehicles. Through Metalsa, King participated in a basic group insurance policy and a voluntary term insurance policy, both ERISA

plans insured by United.[1] Both plans grant United "the discretion and the final authority to construe and interpret the policy" including "the authority to decide all questions of eligibility and all questions regarding the amount and payment of any policy benefits within the terms of the policy as interpreted by United." (Administrative Record ("A.R.") 7; 64.) Both plans grant accidental death and dismemberment benefits for certain injuries. Under both plans, King is eligible for the maximum benefit amount[2] if he suffers a "Loss of Both Hands," and half the maximum benefit amount if he suffers a "Loss of One Hand." (A.R. 36; 103.) Both plans define "Loss of a Hand" as "complete Severance of at least four whole fingers from one hand" (A.R. 36; 103) and "Severance" as "the complete separation and dismemberment of the part from the body" (A.R. 37; 104). In a list of "exceptions," both plans provide that United "will not pay for any loss which . . . is not permanent." (A.R. 39; 105.)[3]

While at work on September 29, 2006, King's hands were caught in a hydraulic sprocket on a conveyor and the machine severely mangled and crushed them. According to Dr. Bobby Chharbra, the surgeon who treated King that day, King suffered several fractures to both hands at the joint connecting the digits of the hand to the palm.[4] Dr. Chhabra and other physicians

---

[1] The basic group policy is Group Policy No. GLUG-93G9. (Administrative Record ("A.R.") 1.) The voluntary term policy is Group Policy No. GVTL-93G9. (A.R. 58.)

[2] King's maximum benefit amounts are $67,000 under the basic group policy and $100,000 under the voluntary term policy. (A.R. 179; 211.)

[3] The basic group policy also grants the participant one-fourth the maximum benefit amount for uniplegia/total paralysis of a limb (A.R. 36), defined as "loss of use, without Severance of a limb" if "determined by a Physician to be complete and irreversible" (A.R. 37).

[4] Dr. Bobby Chhabra reported "open fracture and dislocations of each of the metacarpal phalangeal joints with multiple lacerations" and that "open wounds over each metacarpal phalangeal joint [that] were extended for repair of these fractures." (A.R. 373.) "The metacarpus

2

attempted to repair these fractures in multiple surgeries by inserting pins and wires in these joints. Some of the injured joints healed but others did not. Physicians ultimately amputated his left index finger, and pins and wires remain in some of King's joints. In a December 4, 2006 report, Dr. Chhabra, wrote that "[t]here is a very high incidence of stiffness given the severity of [King's] injury. He will never have normal use of his hands." (A.R. 399.)

King applied for benefits under both ERISA plans on November 3, 2006, and United requested and received his medical records from September 26, 2006 to January 8, 2007 in order to determine his eligibility. A United physician reviewed King's medical history and the relevant parts of the two plans, and found that, "though [King's] hands are very stiff," King was not entitled to benefits for loss of one or both hands. (A.R. 408.) Accordingly, United denied King's benefits claim, including his claim for loss of hand benefits, on January 29, 2007. King appealed this decision on May 5, 2007 and provided United photographs of his injuries and an additional report from Dr. Chhabra dated July 2, 2007. According to Dr. Chhabra's July 2, 2007 report, "[b]oth [of King's] hands were crushed . . . and he required multiple surgeries for salvage . . . . The surgeries have been successful in salvaging his hands however he . . . will have permanent stiffness and deficits in sensation and motor function in both hands." (A.R. 325.) On August 30, 2007, United granted him benefits under another provision of the basic group plan, but again found that King was not entitled to benefits for loss of hands.[5] King appealed United's decision

---

is the part of the hand between the wrist and the fingers." 3 Attorney's Dictionary of Med. (MB) H-19. The fingers, or digits, are composed of two or three phalanges. 3 Attorney's Dictionary of Med. (MB) Fig. H-1 and H-2. Therefore, the metacarpal phalangeal joints are the joints that connect the digits to the rest of the hand.

[5]United found King was entitled to benefits for uniplegia/paralysis of a limb for both hands under the basic group policy. King received a total of $67,000 for this claim. (A.R. 316.)

3

a second time on October 13, 2008. Through his attorney, King also submitted a questionnaire to Dr. Chhabra that allowed the doctor to check "yes" or "no" to several statements regarding King's injury. King did not notify United that he had sought additional medical input, and United denied King's appeal on November 5, 2008. On November 13, 2008, King received Dr. Chhabra's responses to the questionnaire. Dr. Chhabra checked "yes" to the statement that it was his "medical opinion [that] by nature of the devastating injuries sustained by Mr. King in this accident, [King suffered] severance of his right and left hands." (Compl. Ex. A.) Though United did not have Dr. Chhabra's responses to counsel's questionnaire when it reviewed his benefits claim, King concedes that there is no factual dispute as to King's injuries. The only dispute is whether his injuries fall within the plans' definition of "loss of hands," which requires a complete and permanent severance of at least four fingers from the hand.

## II.

King's benefits claim is before the court on cross-motions for summary judgment.[6] King claims that he is entitled to benefits for loss of one or both hands because his injuries are equivalent to severance; United argues that King is not entitled to these benefits because he has not suffered complete and permanent separation and dismemberment of the hands, as the plan specifies. The court finds no genuine issue of material fact that United did not abuse its

---

[6]Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To resolve cross-motions for summary judgment, the court reviews "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2005). "When considering each individual motion, the court must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." Id. (internal quotations omitted).

4

discretion when it found that King is not entitled to benefits for loss of hands, and accordingly grants summary judgment for United.

When an ERISA plan administrator has discretion to determine participants' eligibility for benefits, courts review the administrator's decision to deny benefits for an abuse of discretion, Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989), "based on the facts known to [the administrator] at the time," Donnell v. Metro. Life Ins. Co., 165 Fed. App'x 288, 292 (4th Cir. 2006). Under this standard, "[a]n administrator's decision will not be disturbed if it is reasonable, even if [the court] would have come to a different conclusion independently. A decision is reasonable when it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." Vaughan v. Celanese Ams. Corp., No. 07-2064, 2009 WL 2337350, at *5-6 (4th Cir. July 30, 2009) (internal quotations and citations omitted). Factors relevant to the reasonableness determination include the plan's language and the adequacy and strength of the materials that the administrator considered. Donnell, 165 Fed. App'x at 294 n.6.[7] If the administrator both evaluates and pays benefits claims, the administrator operates under a

---

[7]Booth v. Wal-Mart Stores, Inc. Assoc. Health & Welfare Plan, 201 F.3d 335, 342-43 (4th Cir. 2000), identifies eight nonexclusive factors relevant to an abuse-of-discretion review of an administrator's decision to deny benefits:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

These factors are "more particularized statements of the elements that constitute a 'deliberate, principled reasoning process' and 'substantial evidence.'" Donnell, 165 Fed. App'x at 294 n.6.

5

conflict of interest, Metro. Life Ins. Co. v. Glenn, 128 S. Ct. 2343, 2348 (2008), and "that conflict must [also] be weighed 'as a facto[r] in determining whether there is an abuse of discretion,'" Firestone, 489 U.S. at 115 (quoting Restatement (Second) of Trusts § 187 cmt. d (1959)). See also Champion v. Black & Decker Inc., 550 F.3d 353, 358 (4th Cir. 2008) (holding that, under Glenn, the administrator's conflict of interest is "one factor among many that is relevant in deciding whether the administrator abused its discretion"). "The weight accorded to [the conflict] will, of course, depend largely on the plan's language and on consideration of other relevant factors." Carden v. AETNA Life Ins. Co., 559 F.3d 256, 261 (4th Cir. 2009).

With these precepts in mind, the court finds that United did not abuse its discretion in determining that the injuries to King's hands did not satisfy the plans' definition of "loss of hands." United had the responsibility of interpreting and applying the plans' provisions. As noted, the plans define "loss of hand" as "complete severance of at least four whole fingers from one hand" and "severance" as "the complete separation and dismemberment of the part from the body." The plans further provide that they "will not pay for any loss which . . . is not permanent."[8] King suffered fractures at the joints connecting the digits to the rest of the palm, and physicians amputated one finger.[9] Under the circumstances, United reasonably concluded

---

[8]King argues that the plans are ambiguous as to whether permanence is required and that the court must construe this ambiguity against United. Even if the permanence requirement is ambiguous, after Glenn, United's decision to interpret that provision in its financial interest is merely one factor weighing against the reasonableness of its decision, Carden, 559 F.3d at 261, and does not overcome the other factors indicating that United's decision was reasonable.

[9]King argues that, because neither plan defines "finger," the court should define the term to include the metacarpus. Even if the court applies this definition of finger, King is not entitled to loss of hand benefits because he did not suffer permanent and complete separation and dismemberment of the metacarpus from the rest of the hand. Physicians amputated a single finger and repaired the rest of the fractures by inserting pins and wires into the joints.

6

based on substantial evidence that the complete severance of a single finger was not the severance of a hand within the plans' plain language.[10] Therefore, the court finds no genuine issue of material fact that United did not abuse its discretion in denying King benefits for loss of one or both hands, and accordingly grants summary judgment for United.

### III.

Alternatively, King asks the court to remand his claim to United for a third review in light of Dr. Chhabra's responses to counsel's yes-or-no questionnaire. The court finds no basis to remand the claim, and accordingly denies King's request.

In ERISA cases, "remand should be used sparingly," Champion, 550 F.3d at 362, and is appropriate when the claimant did not receive a "full and fair review" under 29 U.S.C. § 1133(2) because "the administrator lacked adequate evidence" in making his decision, Berry v. Ciba-Geigy Corp., 761 F.2d 1003, 1007 (4th Cir.1985).[11]

In King's case, the court finds no basis to remand the claim. When it conducted its final review of King's claim, United considered King's voluminous medical records, photographs of his injuries, and a letter from Dr. Chhabra, and King concedes that there is no factual dispute as to the nature his injuries, only Dr. Chhabra's opinion as to whether the injuries meet the

---

[10]In addition, United's decision to review King's claim a second time, more than a year after King received benefits for paralysis of both hands, indicates that United's conflict of interest did not affect its decision. See Champion, 550 F.3d at 362 (noting that an administrator's decision to voluntarily review multiple appeals from benefit denials "reduc[es] the conflict factor 'to the vanishing point'").

[11]Remand is also appropriate "'where the plan administrator has failed to comply with ERISA's procedural guidelines and the plaintiff/participant has preserved his objection to the plan administrator's noncompliance." Weaver v. Phoenix Home Life Mut. Inc. Co., 990 F.2d 154, 158 (4th Cir. 1993). Because King does not claim that United failed to comply with ERISA's procedural guidelines, the court does not consider this question.

definition of loss of hands under the plan.[12] The court finds that United conducted a full and fair review of King's claim based on adequate evidence and accordingly declines to remand the claim to United.

## IV.

For the foregoing reasons, the court **GRANTS** United's Motion for Summary Judgment, **DENIES** King's Motion for Summary Judgment, and declines to remand the case.

**ENTER**: This 21st day of August, 2009.

UNITED STATES DISTRICT JUDGE

---

[12]Dr. Chhabra's conclusory responses to a yes-or-no questionnaire, which does not indicate that his opinion is based on the plan's definitions, does not require remand. See Gallagher v. Reliance Standard Life Ins. Co., 305 F.3d 264, 274 (4th Cir. 2002) (finding that a physician's opinion that the claimant is disabled does not preclude a contrary ruling on summary judgment in an ERISA case when physician does not indicate that his opinion is based on the plan's definition of disability); Lucy v. Macsteel Serv. Ctr. Short Term Disability Plan, 107 Fed. App'x 318, 321 (4th Cir. 2004) ("When a claimant continues to work and has an improving condition, conclusory statements that he is totally disabled are not enough to create a genuine issue of material fact."); Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003) ("[C]ourts have no warrant to require administrators to accord special weight to the opinions of a claimant's physician.").

8